Evan J. Smith
BRODSKY SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HOMER TOVAR,<br><br>     Plaintiff,<br><br>  vs.<br><br>J. ALEXANDER'S HOLDINGS, INC.,<br>LONNIE J. STOUT II, DOUGLAS K.<br>AMMERMAN, CARL J. GRASSI, TIMOTHY<br>T. JANSZEN, RONALD B. MAGGARD, SR.,<br>FRANK R. MARTIRE, and RAYMOND R.<br>QUIRK.<br><br>     Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>(1)  Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br>(3)  Breach of Fiduciary Duties<br>(4)  Aiding And Abetting Breach of Fiduciary Duty<br><br><br>DEMAND FOR JURY TRIAL |

Plaintiff Homer Tovar ("Plaintiff"), by and through his attorneys, files this action against the

defendants, and alleges upon information and belief, except for those allegations that pertain to him,

which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.  Plaintiff brings this stockholder action against J. Alexander's Holdings, Inc. ("J.

Alexander's" or the "Company"), the Company's Board of Directors (the "Board" or the "Individual

Defendants,"), and collectively with J. Alexander's, the "Defendants"), for violations of Sections 14(a)

and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and for breaches of fiduciary duty as a result of the Individual Defendants' efforts to sell the Company to SPB Hospitality LLC ("Parent"), and Titan Merger Sub, Inc. ("Merger Sub," and collectively with Parent, "SPB Hospitality") as a result of an unfair process for an unfair price and to enjoin an upcoming stockholder vote on a proposed all cash transaction acquiring all of the Company's remaining outstanding shares, valued at approximately $220 million (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a July 2, 2021 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Parent, a company which is controlled by SPB Hospitality Capital, will acquire all of the remaining outstanding shares of J. Alexander's' common stock at a price of $14.00 per share in cash. As a result, J. Alexander's will become an indirect wholly-owned subsidiary of SPB Hospitality.

3.      Thereafter, on August 9, 2021, J. Alexander's filed a Preliminary Proxy Statement on Schedule PREM14A (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the Preliminary Proxy Statement describes an insufficient process in which the Board rushed through a sales process in which the Board failed to create a committee of disinterested directors to run the sales process.

5.      In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell J. Alexander's without first taking steps to ensure that Plaintiff would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to

benefit themselves and/or SPB Hospitality without regard for Plaintiff and J. Alexander's public stockholders.  Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Plaintiff as a J. Alexander's stockholder.

6.     Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7.     In violation of the Exchange Act and in further violation of their fiduciary duties, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on August 9, 2021 with the SEC in an effort to solicit Plaintiff to vote his J. Alexander's shares in favor of the Proposed Transaction.  The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in breach of the Defendants' fiduciary duties.  As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for J. Alexander's, provided by J. Alexander's to the Company's financial advisor Piper Sandler & Co. ("Piper Sandler"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Piper Sandler and provided to the Board

8.     Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Plaintiff.

COMPLAINT

9.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the breaches of fiduciary duties by Defendants

## PARTIES

10.     Plaintiff is a citizen of Texas and, at all times relevant hereto, has been a J. Alexander's stockholder.

11.     Defendant J. Alexander's, through its subsidiaries, owns and operates complementary upscale dining restaurants in the United States.  J. Alexander's is incorporated in Tennessee and has its principal place of business at 3401 West End Avenue, Suite 260, Nashville, TN 37202.  Shares of J. Alexander's common stock are traded on the NYSE under the symbol "JAX."

12.     Defendant Lonnie J. Stout II ("Stout") has been a Director of the Company at all relevant times.  In addition, Stout serves as the Executive Chairman of the Company Board.

13.     Defendant Douglas K. Ammerman ("Ammerman") has been a director of the Company at all relevant times.

14.     Defendant Carl J. Grassi ("Grassi") has been a director of the Company at all relevant times.

15.     Defendant Timothy T. Janszen ("Janszen") has been a director of the Company at all relevant times.

16.     Defendant Ronald B. Maggard, Sr. ("Maggard") has been a director of the Company at all relevant times.

17.     Defendant Frank R. Martire ("Martire") has been a director of the Company at all relevant times. In addition, Martire serves as the Lead Independent Director of the Company.

COMPLAINT

18.     Defendant Raymond R. Quirk ("Quirk") has been a director of the Company at all relevant times.

19.     The defendants identified in paragraphs 12 through 18 are collectively referred to herein as the "Director Defendants" or the "Individual Defendants."

20.     Non-Defendant SPB Hospitality is a leading operator and franchisor of full-service dining restaurants, spanning a national footprint of hundreds of restaurants and breweries in 38 states and the District of Columbia. SPB Hospitality is a Delaware limited liability company and has its headquarters in Houston, TX.

21.     Non-Defendant Merger Sub is a wholly owned subsidiary of SPB Hospitality created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

23.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NYSE which is headquartered in this District.

## THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

25.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with J. Alexander's and Plaintiff as a J. Alexander's stockholder and owe the Company and Plaintiff the duties of due care, loyalty, and good faith.

26.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with J. Alexander's and owe the Company and Plaintiff in his capacity as a Company stockholder the duties of due care, loyalty, and good faith.

27.     Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company and public stockholders of the Company such as Plaintiff.  To diligently comply with these duties, directors of a corporation must:

> a.      act with the requisite diligence and due care that is reasonable under the circumstances;
>
> b.      act in the best interest of the company and its stockholders such as Plaintiff;
>
> c.      use reasonable means to obtain material information relating to a given action or decision;
>
> d.      refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;
>
> e.      avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

28.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of J. Alexander's, are obligated to refrain from:

        a.     participating in any transaction where the directors' or officers' loyalties are divided;

        b.     participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders, including Plaintiff; and/or;

        c.     unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders, including Plaintiff.

29.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to J. Alexander's and Plaintiff in his capacity as a public stockholder of J. Alexander's, including their duties of loyalty, good faith, and due care.

30.     As a result of the Individual Defendants' divided loyalties, Plaintiff will not receive adequate, fair or maximum value for their J. Alexander's common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

31.     J. Alexander's, through its subsidiaries, owns and operates complementary upscale dining restaurants in the United States. The Company operates restaurants under various concepts, including J. Alexander's, Redlands Grill, Lyndhurst Grill, Overland Park Grill, Merus Grill, and

Stoney River Steakhouse and Grill. As of April 20, 2020, it operated 47 restaurants in 16 states. J. Alexander's was founded in 1970 and is headquartered in Nashville, Tennessee.

32.     The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated impressive financial results.  For example, in the May 18, 2021 Press Release announcing its 2021 Q1 financial results, the Company highlighted Cash flow from operations of $4,809,000 as compared to cash flow from operations in the first quarter of 2020 of $1,830,000, Net sales of $57,375,000, Net income of $3,390,000 compared to a net loss of $17,644,000 in the first quarter of 2020, and Adjusted EBITDA of $7,192,000 compared to $1,964,000 in the first quarter of 2020.

33.     The Company CEO Mark A. Parkey commented on the results in the Press Release, "'As states and cities continue to ease capacity restrictions and the warmer spring and summer weather allows for more comfortable outdoor dining, we believe our guests will return even more frequently to enjoy the experience of dining with us, while continuing to enjoy the convenience of our carry-out offerings. While our first quarter results and our new restaurant opening exceeded our own expectations, we have learned to take nothing for granted over the last year. As we emerge from the pandemic, we will continue to strive to make every guest a loyal regular and maintain the level of hospitality that our loyal regulars have come to expect.'"

34.     Despite this successful year and positive outlook, the Individual Defendants have caused J. Alexander's to enter into the Proposed Transaction for insufficient consideration.

***The Flawed Sales Process***

35.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual

COMPLAINT

Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible no matter the price.

36.     Notably, the Preliminary Proxy Statement fails to indicate if a special committee of disinterested Board members was created to run the sales process, and if not, the specific reasoning for such a decision.  This is especially concerning as the Preliminary Proxy Statement indicates that Defendant Stout was affiliated with one entity involved in the process.

37.     In addition, the Preliminary Proxy Statement notes that since 2018 the Board has been the subject of at least two proxy fights involving activist stockholders dissatisfied with the direction the Board had taken the Company in, one of which resulted in the Board failing to obtain a majority vote of disinterested Company stockholders regarding a separate strategic alternative, and another which involved a bid by an activist investor to take over the Company.  The Preliminary Proxy Statement fails to disclose what effect, if any, these activist stockholders had on sales process leading to the Proposed Transaction.

38.     In addition, while the Preliminary Proxy Statement indicates that a "financial advisor" was engaged by the Company in March 2018 to analyze strategic alternatives, the Preliminary Proxy Statement fails to indicate if this financial advisor was Piper Sandler or some other entity, the consideration exchanged, if any, and the results of the financial advisor's efforts.

39.     In addition, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and SPB Hospitality, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, and if so in what way and if the terms of any such agreements included "don't-ask, don't-waive" provisions or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away.

40.     The Preliminary Proxy Statement is also silent as to the nature of any standstill agreements entered into between the Company and any of its large stockholders, including Ancora Advisors, LLC.

41.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

42.     On July 2, 2021, J. Alexander's issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **NASHVILLE, Tennessee, July 2, 2021** - J. Alexander's Holdings, Inc. (the "Company" or "J. Alexander's") (NYSE: JAX), owner and operator of J. Alexander's Restaurant, Redlands Grill, Stoney River Steakhouse and Grill and selected other restaurants, today announced that the Company entered into a merger agreement under which SPB Hospitality LLC ("SPB Hospitality") will acquire the Company in an all cash transaction valued at approximately $220 million. The Company's shareholders will receive $14.00 in cash per share of common stock of the Company, representing a 78% percent premium to the closing share price on February 9, 2021, the last trading day prior to the Company's announcement of its commitment to completing the strategic alternatives process, and a premium of approximately 14% to the price on July 1, 2021.
>
> Certain of the Company's officers, directors and shareholders including Newport Global Opportunities Fund I-A LP and Ancora Holdings LLC, holding, in the aggregate, as of July 1, 2021, over 20% of the outstanding shares of Company common stock, entered into a voting agreement with SPB Hospitality pursuant to which they agreed, among other things, to vote their respective shares of Company common stock in favor of the merger.
>
> The merger was approved by J. Alexander's Board of Directors following a review of a wide range of strategic alternatives, which was first announced in August 2019, and continued in 2020 (until the onset of the pandemic) and 2021. The transaction is expected to be completed early in the fourth quarter of 2021, subject to approval by J. Alexander's shareholders, expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as well as other customary closing conditions.
>
> Lonnie J. Stout II, Executive Chairman of the Board of Directors, said, "Our board evaluated a full range of strategic, financial and capital structure alternatives to best serve the interests of our shareholders. After a thorough evaluation and strategic

process, the Board is confident that this transaction provides excellent value to our shareholders."

Mark A. Parkey, President and Chief Executive Officer, added, "The merger transaction will provide liquidity at a significant premium for our shareholders while providing a home for our concepts, our employees, and our loyal guests with SPB Hospitality."

"We are honored to acquire these storied brands and look forward to welcoming this experienced team into the SPB family," said SPB Hospitality Chief Executive Officer, Jim Mazany. "Lonnie and Mark are true pioneers and respected leaders in the industry. Partnering with the Company to harness the power of these brands is an incredible opportunity."

Piper Sandler & Co. acted as financial advisor and Bass, Berry & Sims PLC acted as legal counsel to J. Alexander's and its Board of Directors. J.P. Morgan Securities LLC and Configure Partners LLC served as financial advisors and Hunton Andrews Kurth LLP served as legal counsel to SPB Hospitality.

### The Inadequate Merger Consideration

43.     Significantly, the Company's financial prospects and opportunities for future growth establish the inadequacy of the merger consideration.

44.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.  Moreover, the valuation does not adequately take into consideration how the Company is performing and its promise.

45.     On July 2, 2021, *Restaurant Dive* released its article on the Proposed Transaction, saying, "Investor interest in full-service restaurants, however, is bouncing back as sales and traffic improve for the category. SPB has extensive experience with casual dining concepts, boasting hundreds of restaurants and breweries in 38 states and Washington, D.C. Last year SPB bought CraftWorks, which operates restaurants and breweries including Logan's Roadhouse, Old Chicago, Rock Bottom and Gordon Biersch Brewery Restaurant. It inherited 261 company-owned locations, which all closed during the pandemic after CraftWorks lost debtor-in-possession financing. It appears some of these restaurants are still closed, but under SPB, at least 194 reopened, according to FSR magazine. J. Alexander's Holdings has had suitors prior to SPB's acquisition. In April 2019, activist

investor Ancora Advisors submitted a takeover bid for the company, but the restaurant group's board of directors rejected the proposal because the price was too low and they didn't think it would increase shareholder value"

46.     *FSR Magazine*'s July 13, 2021 article on the Proposed Transaction touched upon SPB Hospitality's great year and its acquisition of promising J. Alexander's:

> If you want to talk turnarounds in the especially hard-hit restaurant business over the past 16 months, SPB CEO Jim Mazany says, just look at the March 2020 spell versus the summer period thus far. The restaurant industry experienced a flurry of M&A activity recently, with five deals struck in seven days. On the buyer-side most recent? SPB Hospitality, which acquired J. Alexander's on July 2 for $220 million. 'We have had just an incredible year,' Mazany says. 'So between Logan's Roadhouse and Old Chicago, and our brewery group, the company itself has had a tremendous transformation in our business model, which put us in a position to look for opportunities to acquire other brands.
>
> Mazany says SPB has plans to scale J. Alexander's, but also sees 'possibilities for acquisitions to come into the SPB portfolio that make sense. That complement what we do. And that work within our strategies.'
>
> J. Alexander's recently rounded the corner on a significant turnaround of its own. The chain, public for nearly six years, indicated in summer 2019 it was seeking strategic alternatives to reboot the business. It retained investment banking firm Piper Sandler to facilitate a review of and said anything from a merger, sale, acquisition, share repurchase program, or strategic investment, was on the table. The question at hand was if J. Alexander's was truly big enough to be an efficient standalone company on the stock market. Piper Sandler contacted more than 125 potential buyers, and three emerged. One offered 'a premium to the then-current market price,' but that changed once the pandemic dropped in. J. Alexander's reduced its proposed purchase price multiple times and insisted on conditions relating to performance. For a bit, talks shelved in favor of COVID-response tactics. But at last, sales lifted 5 percent in April versus 2019—the first time J. Alexander's reported growth since coronavirus.
>
> Where we saw the opportunity that they were looking for alternatives to sell, it was something that I actively wanted to pursue for us because I believe it's a really good complement to what we do,' Mazany says. 'And I think the brand fits in really nicely into our portfolio and we have plans for growth in all of our SPB brands. But specifically, as we look at this acquisition, we also have plans to grow the J. Alexander's brand into the future.'

47.     Clearly, while the deal will be beneficial to SPB Hospitality it comes at great expense to Plaintiff and other public stockholders of the Company,

COMPLAINT

48.     Moreover, post-closure, Plaintiff will be frozen out of any future benefit from his investment in J. Alexander's' bright future.

49.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for the SPB Hospitality at the expense of Plaintiff as a public stockholder, which clearly indicates that Plaintiff and other stockholders were not an overriding concern in the formation of the Proposed Transaction.

***Preclusive Deal Mechanisms***

50.     The Merger Agreement contains certain provisions that unduly benefit the SPB Hospitality by making an alternative transaction either prohibitively expensive or otherwise impossible.  Notably, in the event of termination, the merger agreement requires J. Alexander's to pay up to $10 million to the SPB Hospitality and/or its affiliates, if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, J. Alexander's must pay this termination payment even if it consummates any competing Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers. The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

51.     The Merger Agreement also contains a "No Solicitation" provision that restricts J. Alexander's from considering alternative acquisition proposals by, *inter alia*, constraining J. Alexander's' ability to solicit or communicate with potential acquirers or consider their proposals. Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide *"Acquisition Proposal"* if it constitutes or is reasonably calculated to lead to a "*Superior Proposal*" as defined in the Merger Agreement.

52.     Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  Here, the Individual Defendants agreed to provide to the SPB Hospitality and/or its affiliates information in order to match any other offer, thus providing the SPB Hospitality

COMPLAINT

access to the unsolicited bidder's financial information and giving Parent the ability to top the superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of the SPB Hospitality.

53.     These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company, Plaintiff and its public stockholders.

54.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

55.     The breakdown of the benefits of the deal indicate that J. Alexander's insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of J. Alexander's.

56.     Notably, Company insiders, currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. However, while the Preliminary Proxy Statement provides the following information, it fails to disclose an accounting of how much merger consideration will be afforded to Company insiders as a consequence of the consummation of the Proposed Transaction and the cashing out of these amounts:

COMPLAINT

| Name and Address of Beneficial Owner | Amount of Common Stock Beneficially Owned[1] | Percentage of Stock Common Outstanding |
|---|---|---|
| Ancora Holdings Inc.<br>6060 Parkland Blvd., Suite 200<br>Cleveland, OH 44124 | 1,133,305[2] | 7.51% |
| Hill Path Capital LP<br>150 East 58th Street, 32nd Floor<br>New York, NY 10155 | 932,685[3] | 6.18% |
| Newport Global Opportunities Fund I-A LP<br>21 Waterway Avenue, Suite 150<br>The Woodlands, TX 77380 | 1,703,991[4] | 11.25% |
| River Road Asset Management, LLC<br>462 South Fourth Street, Suite 2000<br>Louisville, KY 40202 | 855,634[5] | 5.67% |
| Vanguard Group Inc.<br>100 Vanguard Boulevard<br>Malvern, PA 19355 | 764,517[6] | 5.07% |
| Douglas K. Ammerman** | 117,754[7] | * |
| Carl J. Grassi** | 20,500[8] | * |
| Timothy T. Janszen** | 1,703,991[4] | 11.25% |
| Ronald B. Maggard, Sr.** | 117,177[9] | * |
| Frank R. Martire** | 176,000[10] | 1.16% |
| Raymond R. Quirk** | 168,798[11] | 1.11% |
| Lonnie J. Stout II**** | 447,423[12] | 2.90% |
| Mark A. Parkey*** | 308,087[13] | 2.02% |
| J. Michael Moore*** | 209,975[14] | 1.38% |
| All directors and executive officers as a group (11 persons) | 3,452,438[15] | 21.38% |

57.     Moreover, upon the consummation of the Proposed Transaction, the Preliminary Proxy Statement indicates that each outstanding Company stock option, restricted share, or other equity award will be canceled and converted into the right to receive certain consideration, not shared by Plaintiff, according to the merger agreement, as follows:

- 15 -

COMPLAINT

| Name | No. of Shares of Company Common Stock Subject to Options[1] | Value of Options ($)[2] | No. of Restricted Share Awards[3] | Value of Restricted Share Awards ($)[4] | No. of Performance Share Awards[5] | Value of Performance Share Awards ($)[6] | No. of Shares of Company Common Stock Issuable in Exchange for Class B Units[7] | Value of Class B Units ($)[8] | Total Value ($) |
|---|---|---|---|---|---|---|---|---|---|
| *Executive Officers* | | | | | | | | | |
| Lonnie J. Stout II | 375,000 | 1,645,000 | 14,813 | 207,382 | 19,750 | 276,500 | 58,430 | 818,018 | 2,946,900 |
| Mark A. Parkey | 175,000 | 771,550 | 44,563 | 623,882 | 32,750 | 458,500 | 17,529 | 245,406 | 2,099,338 |
| J. Michael Moore | 217,000 | 1,149,550 | 23,625 | 330,750 | — | — | 17,529 | 245,406 | 1,725,706 |
| Jessica L. Hagler | 93,500 | 588,400 | 21,750 | 304,500 | — | — | 2,922 | 40,902 | 933,802 |
| Jason S. Parks | 86,500 | 563,130 | 21,750 | 304,500 | — | — | 1,753 | 24,540 | 892,170 |
| *Non-Employee Directors* | | | | | | | | | |
| Douglas K. Ammerman | 60,000 | 263,200 | 18,375 | 257,250 | — | — | — | — | 520,450 |
| Carl J. Grassi | — | — | 10,500 | 147,000 | — | — | — | — | 147,000 |
| Timothy T. Janszen[9] | 60,000 | 263,200 | 18,375 | 257,250 | — | — | — | — | 520,450 |
| Ronald B. Maggard, Sr. | 60,000 | 263,200 | 18,375 | 257,250 | — | — | — | — | 520,450 |
| Frank R. Martire | 60,000 | 263,200 | 18,375 | 257,250 | — | — | — | — | 520,450 |
| Raymond R. Quirk | 60,000 | 263,200 | 18,375 | 257,250 | — | — | — | — | 520,450 |

58.     In addition, certain employment agreements with certain J. Alexander's executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Executive Officer | Termination by Company Without Cause or by Executive for Good Reason Following a Change in Control ($) |
|---|---|
| Lonnie J. Stout II | |
| Employment Agreement | 1,296,592[1] |
| Salary Continuation Agreement | 2,891,861[2] |

| | |
|---|---|
| Severance Benefits Agreement | 600,000[3] |
| Mark A. Parkey | |
| Employment Agreement | 1,130,470[2] |
| Salary Continuation Agreement | 1,630,087[1] |
| J. Michael Moore | |
| Employment Agreement | 1,122,518[1] |
| Salary Continuation Agreement | 1,092,366[2] |
| Jessica L. Hagler | |
| Employment Agreement | 480,425[4] |
| Jason S. Parks | |
| Employment Agreement | 408,725[4] |

59.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders

60.     Thus, while the Proposed Transaction is not in the best interests of J. Alexander's, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

61.     On August 9, 2021, the J. Alexander's Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation their fiduciary duties, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

62.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

a.  The specific reasoning as to why no special committee of the Board composed of disinterested directors was created to run the sales process;

b.  What effect, if any, activist stockholders had on sales process leading to the Proposed Transaction;

c.  Whether the "financial advisor" was engaged by the Company in March 2018 to analyze strategic alternatives, was Piper Sandler or some other entity, the consideration exchanged, if any, and the results of the financial advisor's efforts;

d.  The Preliminary Proxy Statement is also silent as to the nature of any standstill agreements entered into between the Company and any of its large stockholders, including Ancora Advisors, LLC, including all specific conditions under which any such provision would fall away;

e.  Whether the confidentiality agreements entered into by the Company with and SPB Hospitality differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in what way;

f.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including SPB Hospitality, would fall away; and

g.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications

regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning J. Alexander's' Financial Projections*

63.     The Preliminary Proxy Statement fails to provide material information concerning financial projections for J. Alexander provided by J. Alexander management and relied upon by Piper Sandler in its analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

64.     Notably the Preliminary Proxy Statement reveals that as part of its analyses, Piper Sandler reviewed, "the Company projections provided by Company management."

65.     Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that J. Alexander's management provided to the Board and Piper Sandler.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

66.     With regard to the J. Alexander's Financial Projections prepared by the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

> a.  Restaurant Operating Expenses, including all underlying necessary metrics, assumptions, and adjustments, including specifically: food and beverage costs, restaurant labor and related costs, other operating expenses, depreciation and

amortization of restaurant property and equipment, and losses on disposals of assets.

67.      This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

68.      Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Piper Sandler's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Piper Sandler*

69.      In the Preliminary Proxy Statement, Piper Sandler describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

70.      With respect to the *Selected Public Companies Analysis*, the Preliminary Proxy Statement fails to disclose:

     a.  The specific metrics for each compared company; and

     b.  The specific inputs and assumptions used to determine the utilized implied multiple reference range for EV/CY 2021E EBITDA of 7.0x – 13.3x.

71.      With respect to the *Selected Precedent Transactions Analysis*, the Preliminary Proxy Statement fails to disclose:

     a.  The specific metrics for each precedent transaction;

COMPLAINT

      b.   The specific inputs and assumptions used to determine the utilized implied multiple reference range for EV/LTM EBITDA of 6.5x – 10.4x;

      c.   The specific date on which each precedent transaction was announced;

      d.   The specific date on which each precedent transaction closed; and

      e.   The aggregate value of each precedent transaction.

72.     With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose:

      a.   The Company's projected unlevered free cash flows utilized;

      b.   The Company's terminal value utilized;

      c.   The specific inputs and assumptions used to determine the applied perpetuity growth rate range of 3.7% to 4.7%;

      d.   The Company's fiscal year 2019 through estimated fiscal year 2021 adjusted EBITDA compounded annual growth rate ("CAGR");

      e.   The specific inputs and assumptions used to determine the applied discount rate range of 12.2% to 17.2%;

      f.   The Company's weighted average cost of capital; and

      g.   The utilized market capitalization risk premium.

73.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

74.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public J. Alexander's stockholder.  As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

## Claim for Breach of Fiduciary Duties

### (Against the Individual Defendants)

75.     Plaintiff repeats all previous allegations as if set forth in full herein.

76.     The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff in his capacity as a Company public stockholder.

77.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive of the true value of his investment in J. Alexander's.

78.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to Plaintiff in his capacity as a stockholder of J. Alexander's by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of J. Alexander's to its public stockholders, including Plaintiff.

79.     Indeed, Defendants have accepted an offer to sell J. Alexander's at a price that fails to reflect the true value of the Company, thus depriving Plaintiff of the reasonable, fair and adequate value of his shares.

80.     Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff all material information necessary for him to make an informed decision on whether to vote his shares in favor of the Proposed Transaction.

81.     The Individual Defendants dominate and control the business and corporate affairs of J. Alexander's, and are in possession of private corporate information concerning J. Alexander's' assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of J. Alexander's such as Plaintiff which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

82.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff.

83.     As a result of the actions of the Individual Defendants, Plaintiff will suffer irreparable injury in that he has not and will not receive his fair portion of the value of J. Alexander's' assets and has been and will be prevented from obtaining a fair price for his common stock.

84.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff, all to the irreparable harm of Plaintiff.

85.     Plaintiff and has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND COUNT

### Aiding and Abetting the Board's Breaches of Fiduciary Duty

### Against Defendant J. Alexander's

86.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

87.     Defendants J. Alexander's knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred.

88.     As a result of this conduct, Plaintiff has been and will be damaged in that he has been and will be prevented from obtaining a fair price for his shares.

89.     Plaintiff has no adequate remedy at law.

## THIRD COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

90.     Plaintiff repeats all previous allegations as if set forth in full herein.

- 23 -

COMPLAINT

91.     Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote their shares in favor of the Proposed Transaction.

92.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

93.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

94.     The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Definitive Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

95.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

96.     The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Definitive Proxy Statement not misleading.

97.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**FOURTH COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

98.     Plaintiff repeats all previous allegations as if set forth in full herein.

99.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

100.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement and nevertheless approved, ratified and/or

failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

101.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of J. Alexander's' business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

102.    The Individual Defendants acted as controlling persons of J. Alexander's within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause J. Alexander's to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled J. Alexander's and all of its employees.  As alleged above, J. Alexander's is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor, and against the Defendants, as follows:

A.    Enjoining the Proposed Transaction;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

COMPLAINT

C.      Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

D.      Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for J. Alexander's and obtain a transaction which is in the best interests of J. Alexander's and its stockholders, including Plaintiff;

E.      Directing defendants to account to Plaintiff for damages sustained because of the wrongs complained of herein;

F.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: August 17, 2021

**BRODSKY SMITH**

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*

- 27 -

COMPLAINT